DAIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PTUSA YORK, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  8:17-cv-427 |
| INTERSTATE COMMODITIES, INC., a New York corporation, | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff PTUSA York, LLC, by and through counsel, and for its Complaint against Defendant Interstate Commodities, Inc., states:

### THE PARTIES, JURISDICTION, AND VENUE

1.      PTUSA York, LLC ("PTUSA") is a Delaware limited liability company with its principal place of business at 310 N. First Street, Colwich, Kansas, 67030.  The members of PTUSA are Kansas citizens.

2.      Defendant Interstate Commodities, Inc. ("ICI") is a New York corporation with its principal place of business at 7 Madison Street, P.O. Box 607, Troy, New York, 12181.  No registered agent is listed with the New York Department of State, Division of Corporations.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

4.      The Court has personal jurisdiction over ICI because ICI transacted business in the State of Nebraska, and ICI contractually agreed to personal jurisdiction in state and federal courts in Nebraska.

5.      Venue is proper in this district because the parties contractually agreed to this venue.

<u>BACKGROUND FACTS AND TERMS OF AGREEMENT</u>

6.    On May 24, 2016, ICI and PTUSA entered into an Exclusive Merchandising Agreement ("Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit A.

7.    PTUSA developed a proprietary biomass pellet for use in the animal feed industry (the "Product").

8.    PTUSA constructed a facility in York, Nebraska, to produce the Product.

9.    PTUSA and ICI agreed that ICI would procure raw material for PTUSA's production of the Product according to agreed-upon ingredient content and specifications.

10.    Under the Agreement, ICI also had the exclusive right to market and sell the Product worldwide.

11.    Under the Agreement, ICI agreed to purchase the Product from PTUSA at a "guaranteed floor price" and ICI would, in turn, sell the Product to its customers at a price determined by ICI.

12.    Pursuant to the Agreement, ICI and PTUSA agreed that, if sales profits exceeded specified targets, excess profits would be split between the two entities according to agreed-upon ratios.

13.    To assist in selling more Product, PTUSA and ICI's Agreement provided that the parties would strategically collaborate and mutually develop:

    (a)    promotional campaigns;

    (b)    risk management and hedging plans for the Product for purposes of margin protection;

      (c)     strategic roll out plans and Product sustainability measures; and

      (d)     research and development plans for the Product.

14.    The parties agreed that the initial term of the Agreement would commence on the first day of the month after substantial completion of PTUSA's production facility, defined in the Agreement as the "Commencement Date," which was to occur on or about November 1, 2016, and expire three (3) years after the Commencement Date.

15.    The Agreement was to be renewed automatically for periods of one (1) year thereafter, unless either party provided written notice no later than ninety (90) calendar days prior to the end of the existing term, notifying the other party that it would not renew the Agreement.

16.    Under section 4 of the Agreement, ICI could terminate the Agreement without cause by providing PTUSA ninety (90) days written notice of its desire to terminate the Agreement on a specified date after the ninety (90) day notice period ("No Cause Termination Date"); provided that ICI purchase all Product produced by PTUSA until the effective termination date provided by ICI.

17.    On the No Cause Termination Date, ICI is also obligated to pay a "breakage fee" to PTUSA in the amount of Four Million U.S. Dollars ($4,000,0000) if the No Cause Termination Date was within twelve (12) months of the Commencement Date.

18.    The parties also agreed that, if the Commencement Date had not occurred as of March 1, 2017, ICI could terminate the Agreement by providing PTUSA with written notice of its intent to terminate, and neither party would be liable for damages to the other.

19.     The Agreement provides for the payment of breakage fees by ICI if ICI terminates the Agreement after it is executed but before March 1, 2017, but the Agreement does not specifically provide a breakage fee amount for termination prior to Commencement Date.

20.     Under the Agreement, ICI owes no damages and/or breakage fees to PTUSA only if, as of March 1, 2017, the Commencement Date has not occurred, and ICI provides written notice of termination to PTUSA.

21.     PTUSA's reasonable expectations and intentions, and the intentions of the parties when the Agreement was executed, under the written terms of the Agreement were that, if ICI terminated the Agreement before the Commencement Date, and before March 1, 2017, ICI still owed PTUSA direct damages, including breakage fees.

22.     On July 27, 2016, before PTUSA's facility could be substantially completed and placed into production, and well before March 1, 2017, ICI provided written notice to PTUSA that ICI intended to terminate the Agreement without cause, effective October 31, 2016.

23.     When ICI provided notice of early termination, PTUSA had already expended significant amounts of money, time, and effort to procure investors, purchase real estate, construct the production facility in York, Nebraska, hire personnel, and develop the marketplace for the Product.

24.     After receiving ICI's notice of termination, PTUSA provided notice to ICI that early termination required compensation to PTUSA and demanded ICI pay a $4 million breakage fee.

25.     ICI, however, refused to pay PTUSA any damages, and still has not paid any damages or any breakage fee for ICI's early termination of the Agreement.

26.     The Agreement specifies it is governed by New York law.

<u>COUNT I- BREACH OF CONTRACT</u>

27.     PTUSA incorporates all preceding paragraphs of this Complaint as if set forth fully herein.

28.     The Agreement is a valid and existing contract between the parties.

29.     There was sufficient consideration provided by the parties to support the Agreement's enforceability.

30.     All conditions precedent were met by PTUSA, and PTUSA has performed its obligations under the Agreement.

31.     ICI breached the Agreement when, on July 27, 2016, it provided notice to PTUSA that the Agreement would be terminated effective October 31, 2016, and repudiated all its obligations to perform under the Agreement, including its obligation to pay PTUSA's direct damages including, but not limited to, PTUSA's additional costs for sourcing the raw materials for the Product, additional costs incurred for hiring personnel to perform ICI's obligations, and early termination breakage fees for termination of the Agreement.

32.     ICI's breach of the Agreement has damaged PTUSA in an amount in excess of $75,000, exclusive of interest and costs.

WHEREFORE, Plaintiff PTUSA York, LLC seeks Judgment against Interstate Commodities, Inc. for breach of contract, and all its damages in an amount in excess of $75,000, exclusive of interest and costs to be proven at trial, and for any further relief the Court deems just and equitable.

<u>COUNT II- PROMISSORY ESTOPPEL</u>

33.     PTUSA incorporates all preceding paragraphs of this Complaint as if set forth fully herein.

34.    PTUSA reasonably relied on ICI's promise that it would strategically collaborate and mutually develop with PTUSA:

(a)    promotional campaigns;

(b)    risk management and hedging plans for the Product for purposes of margin protection;

(c)    strategic roll out plans and Product sustainability measures;

(d)    research and development plans for the Product;

(e)    plant production reports;

(f)    pricing for raw ingredients of the Product;

(g)    sales leads and sales reports; and

(h)    profits shared according to agreed-upon ratios if the Product's profits exceeded specified targets.

35.    PTUSA also reasonably relied on ICI's promise that ICI would compensate PTUSA with direct damages, including breakage fees, in the event that ICI repudiated its promises before the Commencement Date and/or before March 1, 2017.

36.    PTUSA's reliance on ICI's promises included expending funds, time, and effort to procure investors, hire personnel, purchase real estate, construct the production facility in York, Nebraska, and to develop the marketplace for the Product.

37.    It was reasonable and foreseeable that PTUSA would rely on those promises made by ICI.

38.    In reliance on those promises, PTUSA sustained damages in the form of incurred costs, expenses, and substantial investments of time and money.

39.     It would be unjust and unconscionable not to compensate PTUSA a reasonable amount for its losses incurred in reliance on ICI's promises.

WHEREFORE, Plaintiff PTUSA seeks Judgment against Interstate Commodities, Inc. for promissory estoppel and an award in an amount in excess of $75,000, exclusive of interest and costs to be proven at trial, that will justly and reasonably compensate PTUSA, and for any further relief the Court deems just and equitable.

COUNT III- BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40.     PTUSA incorporates all preceding paragraphs of this Complaint as if set forth fully herein.

41.     There is an implied covenant of good faith and fair dealing when performing the Agreement.

42.     The implied covenant of good faith and fair dealing protects the parties' reasonable expectations when exercising discretion afforded under the Agreement.

43.     The parties did not contemplate under the Agreement that ICI could terminate the Agreement without liability after PTUSA incurred substantial upfront costs to begin construction of the  facility and used the Agreement with ICI as a basis for procuring financing for the overall project.

44.     The attempt by ICI to terminate the Agreement before the Commencement Date, and well before March 1, 2017, without incurring liability for breakage fees and/or PTUSA's direct damages violates the implied covenant of good faith fair dealing.

45.     ICI's termination of the Agreement caused PTUSA to suffer direct damages in an amount to be proven at trial, including breakage fees in the amount of $4 million that are owed for ICI's termination of the Agreement.

WHEREFORE, Plaintiff PTUSA seeks Judgment against Interstate Commodities, Inc. for an amount in excess of $75,000, exclusive of interest and costs to be proven at trial, and for any further relief the Court deems just and equitable.

(IN THE ALTERNATIVE)
COUNT IV- DECLARATORY JUDGMENT

46.    PTUSA incorporates all preceding paragraphs of this Complaint as if set forth fully herein.

47.    The Declaratory Judgment Act grants courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

48.    In this matter, there is an actual, substantial and real controversy between parties with adverse legal interests arising from the written Agreement.

49.    The dispute is ripe for judicial determination.

50.    A declaration of the parties' respective rights is necessary and proper to settle the conflicting and disputed claims of the parties and will afford the parties relief from uncertainty, insecurity, and controversy with respect to the rights, status, and legal relations between the parties under the Agreement.

51.    A declaration of the parties' respective rights under the Agreement will settle the conflicting and disputed claims of the parties, will afford them the security of knowing precisely what their respective rights are, and will prevent detrimental results that will arise if the parties continue their present course of action without judgment from this Court.

52.    Declaratory relief is equitable, necessary, and proper under the circumstances presented by this case.

53.     PTUSA seeks a declaratory judgment ruling that, pursuant to the terms of the Agreement as alleged herein, PTUSA is entitled to a ruling that:

(a)     ICI must pay PTUSA's direct damages caused by ICI's termination of the Agreement before the Commencement Date, which occurred months before the March 1, 2017 deadline;

(b)     ICI must pay to PTUSA breakage fees in the amount of $4 million for its early termination of the Agreement before March 1, 2017; or

(c)     ICI must pay to PTUSA breakage fees in an amount to be determined by the Court to be just and equitable.

WHEREFORE, Plaintiff PTUSA seeks Judgment against Interstate Commodities, Inc. for a Declaratory Judgment ruling that the Agreement requires ICI to pay PTUSA's direct damages, including breakage fees, for its termination of the Agreement, and for any further relief the Court deems just and equitable.

<u>REQUEST FOR PLACE OF TRIAL</u>

Plaintiff requests Omaha, Nebraska as the place of trial.

Dated:  November 3, 2017.

ARMSTRONG TEASDALE LLP

By: */s/ Darren K. Sharp*
    Darren K. Sharp          NE #21327
    Lynn W. Hursh (to be admitted pro hac)
    2345 Grand Boulevard, Suite 1500
    Kansas City, Missouri 64108-2617
    816.221.3420
    816.221.0786 (facsimile)
    lhursh@armstrongteasdale.com
    dsharp@armstrongteasdale.com

AND

DVORAK LAW GROUP, LLC


By: */s/ Heather S. Voegele*
    Heather S. Voegele        NE #22730
    Brenda K. Smith          NE# 23641
    13625 California St., Suite 110
    Omaha, Nebraska 68154
    402.934.4770
    402.933.9630 (facsimile)
    hvoegele@ddlawgroup.com
    bsmith@ddlawgroup.com

ATTORNEYS FOR PLAINTIFF PTUSA
YORK, LLC